Good morning, everyone. We have two cases for oral argument today. The first case is U.S. v. Patnaik, and we have submitted on the briefs Bonk v. Purcell and Howard Jarvis Taxpayers Association v. City of San Jose. So, counsel, you may proceed. Good afternoon, and may it please the Court. Matthew Yellovich on behalf of the United States. I'd like to reserve five minutes for rebuttal, and I'll keep my eye on the clock. Okay. Thank you, counsel. This Court should reverse dismissal of the indictment because the indictment in this case plainly stated an offense. It recited all of the essential elements of visa fraud, including materiality, and it provided sufficient factual basis to put the defendants on notice for purposes of double jeopardy. Nothing more is required under this Court's case law. I'm happy to answer the Court's questions, or else I'll start with the two fundamental errors we identified below. Well, is it your position that materiality is a question of fact that should have gone to the jury? It is the government's position that it's a mixed question of law and fact that should have gone to the jury. It's certainly sufficient at the indictment stage to allege that the lies were material, and then there's a trial to decide whether we're able to prove that to the satisfaction of the jury, and then ultimately to the district court in post-trial motions, and then to this Court on sufficiency review. And so what would the jury instruction on materiality in this case look like? It's a very good question, Your Honor. Thank you. I'm paid a lot to ask those questions. The reason I say that is it's an open question in the Ninth Circuit whether Maslin Jack, the Supreme Court case, has changed the jury instruction for materiality in the Section 1546 context that we're in here. Ultimately, the government's position has been that the materiality instruction remains the same for 1546 as it is in other fraud contexts, which is that the statement had a tendency to influence or a natural tendency to influence or the capability of influencing the decision-maker. I take my friend's view on the other side to be that Maslin Jack requires a heightened standard of materiality, but all of that is a debate that should happen at trial during the jury instructional conference and perhaps in post-trial motions if the defendants think the district court got it wrong or on direct appeal to this court. It's sufficient at the indictment stage that we allege that the lies are material. We don't have to provide a legal explanation for each term used in the indictment to satisfy how the element may change over time given the case law. That was one of my questions. Isn't the problem here is that it was a speaking indictment? If you just said bare bones, like there was a material misstatement under, you know, about the nature, extent of the working, without any other specification that would have been sufficient. Our view is that would have been sufficient, Your Honor. The case law is quite clear that just tracking the statutory language and alleging all of the elements is sufficient for an indictment, and we clearly did that here at Excerpts of Record 89. We recite all five elements of visa fraud, including materiality. Our provision of more detail I don't think cuts against the fact that we stated an offense. The detail is quite capacious in how it's phrased. At Excerpts of Record 85, the government alleges that the lies in this case went to the existence, scope, and duration of the visa positions being applied for. Those are very basic H-1B visa requirements. Throughout the overt acts, we then allege that the defendants lied about that the placement of the employer would be perfect VIPs, that the jobs would be at perfect VIPs when, in fact, they were being placed at other employers. And that's just a basic H-1B visa requirement is USCIS needs to confirm where the jobs will be before authorizing the visas. And I take the defendants' position to be on appeal that they didn't, in fact, lie, that perfect VIPs was the employer, and that's a contention they can raise at trial. It's a defense they can raise at trial. We will have to prove beyond a reasonable doubt that those were, in fact, lies. They were false statements. And we will have to prove beyond a reasonable doubt that they knew they were lies at the time of the visa application. And so those are trial issues. They don't go to whether there's an offense that's actually stated in the indictment, which there plainly was here. My other question was the ITSERV district court opinion from D.C. We don't have to rule whether or not that was correctly decided or not correct. We could just assume it is or assume it not and just say, you know, because it was material at the time, it doesn't matter. That's correct, Your Honor. There are two reasons why you don't need to decide whether ITSERV was correctly decided or not. The first is that the questions that that case addressed in terms of what USCIS was asking for of the petitioners are different than the questions that prompted the false responses in this case. The questions in the ITSERV case were about granular day-to-day itineraries for the full three-year period of the visa. That's not what the alleged lies are here. The alleged lies go, as I said, to the very existence of the job, to the employer, to the duration of the job. Those kind of basic requests for information remain undisturbed after ITSERV. But in addition to that, for a second reason, even if the questions were the same, even if ITSERV was addressing the exact same information that was addressed in the indictment here, you don't need to decide whether ITSERV was correct or not because it postdates the conduct by three years. So under this Court's case law, United States v. McKenna, materiality is assessed at the time the false statements are offered. And later evidence that the statement could not ultimately have been material to the decision maker is irrelevant to whether it was material at the time it was offered. And here, the alleged conduct in the indictment spans from 2011 through 2017. That's three years before the litigation in the District of Columbia that resulted in the ITSERV decision. And so it was material at the time to the speakers. It was material to the recipients, even if it was the same subject matter that the ITSERV decision covered, which we contend it certainly was not. How would it affect the decision whether or not to permit the visas? How does the fact that they were a staffing out company as opposed to an on-site company make a difference? And does it also make a difference that they were both a chip builder and a staffing services company? So we think that those questions will be answered at trial and contested between the sides at trial as to how it could have influenced USCIS. At the indictment stage, we allege that USCIS was asked for this information and was provided false answers, and that was material to USCIS. I can tell you from the regulations in CAESAW that the reason it's material, the reason that it has a capability of influencing — Yes, I think I'd like to know that. — is that the statutory grounds for this H-1B visa program require both the Department of Labor and USCIS to be confident that there is a bona fide job at the time that the visa application is made, so that employers are not — or staffing agencies are not bringing over folks when there's no job yet to place them in. They need to make sure that the wages are the same prevailing wages in that market and for that specialty occupation. There's no way to do that if someone's lying to the government about whether there's a job, who the employer is, how long the job will last, or where it's located. And that includes — So does USCIS not grant H-B-1 visas to staffing out companies? I think they do, Your Honor, but I think it doesn't excuse the defendants from lying about it. Now, they might contend that they told the truth, and that's a trial issue, but for indictment purposes, we're not alleging that they didn't comply with immigration rules or regulations. We're alleging that they lied in the application. And so even if they could have gotten the visas through other means, through lawful means, they are not permitted to lie. And that's what Section 1546 penalizes, and that's the charge in this case. How should they answer that question if it's a staffing agency? Since the jobs are not present at the time and the locations are unknown at the time, how should they answer that question? Well, if there were not jobs at the time, I think that — I think there's a few different questions baked in there. So if there are not jobs at the time of the visa application, the employer shouldn't apply for an H-1B visa because the program requires there to be an existence of a job that they are applying for a visa for. Well, doesn't that preclude, like, staffing agencies from ever applying for H-1B ones? Because that's just the nature of the business, isn't it, that they bring the workers in, and then when the job materializes, they staff them out? Respectfully, no, Your Honor. I think that a staffing agency could say, as they have contended on appeal, we perfect VIPs are the employer. We are hiring them, and we will pay them regardless of whether we staff them out or not because they are going to do work for us. And that's fine, except they need to disclose on the application that the person will do off-site location work. That's one of the fields in the H-1B visa application. These defendants lied as to that question by saying — They just said that they're going to work for them. Correct. And if they knew at the time that those individuals would actually be placed employers throughout the area, that was something they needed to disclose to USCIS when they applied for the visa. That's both an alleged false statement and also material to the agency as to whether to grant the visa or not. If there are no further questions, I'm happy to reserve my time for rebuttal. All right. You may do so. Thank you. Mr. Cannon?  Good afternoon. Thank you, and may it please the Court. My name is Christopher Cannon. I represent Nimrata Patnik. The first thing I'd—this is a simple case. The government submitted a poorly drafted indictment, and a respected district court judge decided that indictment did not charge a crime. The judge offered the government the opportunity to amend the indictment, and the government didn't take her up on that opportunity. I was listening here to my colleague from the U.S. Attorney's Office say that the indictment was okay because somehow the indictment charged the perfect VIP wasn't the employer. In fact, the indictment doesn't say the perfect VIP wasn't the employer. What the indictment does is it breaks down different parts of a job and uses terms that are not defined in the Immigration Act and say that that's somehow—that makes it somehow illegal what they did. When you asked the court about whether, because this was a speaking indictment, whether that's a problem for the government, and it absolutely is because in the indictment, the indictment describes what perfect VIP allegedly did, and it just describes the legal operations of the staffing company. There's nothing wrong with what perfect VIP did, and there's nothing wrong with what perfect VIP did as alleged in the indictment. In fact, when you look at the terms of the indictment, it admits that perfect VIP paid their employees. So there's no allegation that when the indictment uses the term end client, that's not a statutorily relevant distinction. The Immigration Act talks about employers, and it says— Well, the problem is we're looking only at materiality, so we're supposed to assume that the other elements are met, which is that the company purposely lied on the form, right? So we're just looking at whether or not that's material. We are looking at whether it's material, and whether it's material, Judge Wardlaw asked whether that's a question for the jury or whether that's a question for the court, and I think in Cungas v. United States, the Supreme Court clearly said that in an immigration case, materiality is a question for the court to decide. To quote Cungas, it says, although the materiality of a statement rests upon a factual evidentiary showing, the ultimate finding of materiality turns on the interpretation of substantive law. Since it's the court's responsibility to interpret the substantive law, we believe it is proper to treat the issue of materiality as a legal question. So I don't think that there's any question that Judge Freeman had the right and the duty to make the decision that she did. So how do you get around the pretty prolific precedent that says that even if the government didn't have the authority to ask the question, people don't have the authority to lie, and so even if the question was irrelevant or beyond the scope of what they can ask, you can't lie about it? Because when you look at those questions that deal with lies, they all deal with lies to a question that's being authorized by statute. Correct. When you look at 922G, those questions are authorized by statute. When you look at the Agricultural Adjustment Act, those questions were authorized by statute. Here we have questions that aren't authorized by statute. We have questions that are beyond the statute and are beyond the regulations. And you earlier asked a question about whether this court has to follow IT services. It doesn't make a difference whether this court decides to follow IT services or not because in the rescission memo, the USCIS determined that IT services was correct, and USCIS is no longer asking for this information. Why is that relevant when at the time the H-1B1 forms were submitted, they were relevant and they were, you know, being relied upon by USCIS? The fact that they rescinded that years later, why is that relevant to that? Because under ITSERV and under a fair reading of the statute, USCIS wasn't authorized to ask for this information. Even though they were asking for it, that was an ultraviarious act by USCIS. They simply didn't have statutory or regular authority to do that. Their inquiry is limited to two items, whether someone is qualified to work in a specialty occupation and what MSA that person is going to be working in. So how are you distinguishing all the precedent that says it doesn't matter whether or not the government was authorized to ask the question or not, you can't lie? What's the distinction, like NAP and CAP or all these other cases? All those cases deal with a statute that requires someone to provide information. And in this case, the statute does not require the information. The statute only requires information as to whether someone is working in a specialty, is qualified. I guess why is that a relevant distinction then? Because particularly in the immigration context, you have to prove materiality. It seems actually worse to ask a question that's unconstitutional than ask a question that's just beyond the scope of the statute. No, it's actually a very different analysis. Because if you look at the 922G questions, obviously in Bruin and Rahimi, the Supreme Court has not said that there can be no gun regulation. So questions as to who is going to be the purchaser of a gun obviously are relevant to show and they're material to show whether someone is complying with the statutory context. In this case, we're not saying that the entire Immigration Act is unconstitutional. We're saying that the immaterial questions that USCIS was asking, they don't have a right to that answer because a reasonable USCIS official looking at that information is not entitled to consider that information so it can't be material. Can I ask, just going back, were there questions on a form that your client filled out or did your client gratuitously throw out that the immigrants would be working on-site? Those were questions on a form, and as we indicated in our brief, those forms are outdated because those forms ask to provide a complete itinerary of where someone is working, and the forms are not authorized by statute to provide that information. And if you look at the requirements to show a material false statement under 1546, you have to provide that on a form required by statute. Why didn't the clients just say that they would be staffed out to different locations on that form? Because the process is a flexible process. It's designed to be flexible. If you're a staffing company, the regulations allow you to say that they're going to be working at the home office, and when you're working at the home office, you're going to have a variety of ultimate jobs that you're going to be staffing out to. And the regulations allow you to put in the home office address, which is what they did. You put it in at least six months ahead of time before someone can come to the U.S., and then the staffing company places their employee at the clients of the staffing company. So there's no allegation that these weren't the employees of Perfect VIP. It seems like a jury question of that, whether or not that was an intentional lie or not then. I don't think so because it's not going to be material because the regulations say that the work site of a staffing company is the address of the staffing company. So the only thing that would be material would be the area code because if there was a potential that they would be working outside the MSA, then under the regulations you would have to provide a new LCA. But there's no allegation here that any of these people were working outside the LCA. Counsel, I have a question. Judge Gould, if I could ask you a question. Why wouldn't a reasonable visa applicant, why would they not think that telling the truth on questions posed by the agency was material? Because one, where we're here, the question is not what a reasonable applicant or a reasonable petitioner would think. The question is whether a reasonable USCIS official applying the material could consider that material. So that's really not an issue that's before us. But to also answer your question in a little more detail, the process is designed to be flexible. People apply for H-1B visas and they say, yes, they're going to be working at our home office unless and until we find another place where we're going to put them at a client's site. And there's nothing wrong with doing that. And the regulations specifically say that as long as that client's site is within the same MSA, a new LCA is not required. So the regulations are designed to provide flexibility. They're not designed to say that the information that you put on the original application is cast in stone and can't be changed. The regulations themselves provide flexibility for people to move, for people to change jobs, for the employing staffing company to move them from one job site to another. So there's nothing wrong with putting the home office location as the place where somebody is going to be working. And unless the Court has any other questions, I'll save the additional time for my co-counsel. All right. Thank you, Mr. Cannon. Thank you. Good afternoon. My name is Bruce Funk, and I represent Kartiki Parakeh. And it looks like I'm out of time. No, no, you have five minutes. Oh, I have five minutes. Okay, thank you very much. That's what you asked for. I did. Am I supposed to hit something here? You don't have to do anything. All right. Thank you very much. I wanted to address, I think, two of your questions. One is I think the Court should follow ITSERV. And one of the reasons that it's important and one of the reasons why Judge Freeman looked at that is in ITSERV they basically said all of these questions are capricious. They're outside the statutory framework, and you're not allowed to ask these. And Judge Freeman's analysis of this is not something new. This is a ruling that from day one when you've been asking these, these things you're not allowed to ask. And if you're not allowed to ask, then it's impossible for the answers that are given to these questions, for them to then be material to a false statement. Because we have to take away the difference between. . . Explain that part. You lost me there. Why is that? Well, because if they're. . . Some things you can ask that you might want to know but you might not be allowed to ask. The fact that you're not allowed to ask it doesn't mean it's not material. No. If you're not allowed to ask it, then it can't be material in the immigration fraud statute because it could not. . . That information cannot be relied upon to either grant or deny the H-1B visa to begin with. Secondly, I believe you were on the right track regarding staffing companies. The bottom line is when the applications are submitted, there is an employer. The employer is the staffing company. There is a job because the employer, the staffing company, is required to pay them when they arrive, whether they ultimately put them off-site. If they arrive and they have no off-site work, they're still required to pay them. That is built into the system to make sure that the staffing companies do not bring people, then bench them, don't pay them, and can keep them on ice with having no responsibility until they find a place. That's why staffing companies would normally put down the home office as the address because when you first apply, you may have a contract that's lasting six months, nine months, and the visa may not be granted for six or nine months, and it's gone away. So when a staffing company uses the home office, then they're able to just simply, when they arrive, place them at a different job site, and as long as it's within the same MSA, and the Department of Labor has said all of that and has that all in their rules, you don't have to update it. It's only if you then place them outside the MSA. Is that what your client did, was put the home office address, or did it represent that the foreign workers would be working at that office? On some of the applications, they also said that they would be working at that office because that staffing company was not just a staffing company. It was also a chips company, and so there was the possibility of that also occurring. It's one of the probably reasons why they could afford to put, if they did not have jobs off-site, they could have them work on their own projects. And so, in short, to me, it's the questions that are in this case, I disagree with the government, it's the same type of questions in ITServe where they're saying, you're not allowed to consider that. Thank you very much, unless you have a specific question. Appreciate it. Thank you, counsel. Counsel, the district court reasoned that the statements were not material because the government is not permitted to consider them. How do you respond to that? That's simply a misreading of ITServe. The government is permitted to consider the statements that are allegedly false in this indictment. We have to assume for purposes of analysis that the allegations in the indictment are true. That's this court's case in Boren, cited in the government's briefing. And if you assume the allegations are true, it means that the defendants lied about the existence of the jobs. They lied about where the jobs would be, how long the jobs would last on the applications. Now, I take my friend's argument to be that those weren't lies, that they were actually telling the truth, that that's how the staffing agencies work. But those are trial issues that they can contest at trial. That's not whether we sufficiently alleged the lie and its materiality in the indictment. And we are bound by just the four corners of the indictment under this court's case law at the failure to state an offense stage. Could you articulate succinctly what's different from ITServe in this case, then? Yes. The questions in ITServe that the district court in the District of Columbia found the government was not permitted to ask was for extensive day-to-day itineraries for the full three-year period of an H-1B visa. The allegations in this case are that the defendants lied about the basics of the H-1B visa application, not extra information in a day-to-day itinerary for three years, but the existence of the job, whether there was, in fact, a job at Perfect VIPs when they sent the application in, whether they would work at Perfect VIPs. I heard my friend say that we didn't charge that Perfect VIPs was the employer or was not the employer. But exerts of Record 89, the indictment says that among the false statements was that the beneficiaries, quote, would be employed by Perfect VIPs. So I take it then post-ITServe, you think you see immigration can ask where the employee is going to work generally.  Absolutely, Your Honor. And I know I'm straying outside the four corners of the indictment in answering this question. That's fine. The forms remain the same in the sense that they still ask where the job will be. Will it involve work off-site? And if so, that triggers further questions on the form. Now, ITServe said nothing about that form, that those forms remain the same. It was the request for additional information that ITServe said, you know, USCIS cannot demand detailed three-year itineraries for each H-1B visa applicant. But the basic information that we allege was false here is still asked about today, is still considered by the agency. It's very material. We're confident we'll be able to prove that at trial. So here's an allegation from paragraph 11 of the indictment, that they falsely said that the foreign workers would be working on-site at Perfect VIP's office on internal projects. Did they actually say that? Set aside, we have to assume the truth of that, but did they actually say that on the form? My understanding is the evidence is yes, that the forms have checkboxes for whether the H-1B visa worker will work on-site or off-site. And if they're going to be off-site, they trigger further questions as to where that off-site location will be to make sure that it's in the same location and has the same prevailing wage as the on-site location, right? Because that's what USCIS is trying to determine. And here, the defendants allegedly lied in filling out the form by saying this beneficiary, these 85 beneficiaries, would be working purely on-site at Perfect VIP's when they knew at the time that that was not true. Now, again, they might have trial defenses or post-trial defenses as to why they didn't lie or, if they got it wrong on the form, why we can't prove the intent, right? Because one of the five elements of visa fraud is that they knowingly lied at the time they filled out the form. So if they were thinking they were complying with immigration laws and telling the truth that Perfect VIP's was going to be the employer and that these people were just going to work on-site, that's a defense they can raise at trial. It doesn't make the indictment faulty for failure to state an offense. We state all five elements of the offense here, and that's the only inquiry the court engages in looking at the four corners of the indictment. I just want to add one other point. I'm happy to answer any questions the court may have. But one other point that was raised, the defendants really have no answer for that 90-year history of case law that suggests that or that holds that someone who defrauds the government can't then attack the validity of the government's right to ask the question or consider the answer. And when you look at United States v. CAF, which is cited in the government's brief, that's probably the most on-point case. But in that case, that's a motion to dismiss an indictment because the statute that required the defendants to answer questions was held to be unconstitutional. And the defendants in that case, just like in this case, claimed, well, then our statements that were allegedly false ceased to be material. And the Supreme Court reversed dismissal of the indictment in that case and said that the defendants can't attack the materiality under the law. Well, they try to distinguish all of that by saying in those cases there was a specific statute that authorized the question. Here, USCIS asked questions that were completely arbitrary and capricious. Two responses to that, Your Honor. One is the questions in this case are very authorized by statute. The statutes are cited throughout the government's brief, but it's Title VIII, Section 1182. There are subparagraphs as to what USCIS is permitted to consider and ask. The forms have not changed since ITSERV, so they continue to be asked today on the questions that are allegedly false in this indictment. But the second piece, I would argue, is something that you pointed out in your question, which is I don't understand the legal distinction that would absolve someone of fraud when the question was outside of a statutory authority but not absolve someone of fraud when the question was unconstitutional. I mean, that seems like it reverses things in the order, and I see them well over my time. Thank you very much. All right. Thank you very much, counsel. U.S. v. Patnick will be submitted.
judges: WARDLAW, GOULD, BUMATAY